**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

|  |  |
|---|---|
| GOODMAN CAPITAL FINANCE, A DIVISION OF INDEPENDENT BANK, <br><br> Plaintiff, <br><br> vs. <br><br> DEPENDANCE PLATINUM FL LLC, a Florida limited liability company, <br><br> Defendant. | : <br> : <br> : <br> : <br> :   Case No._____ <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

## COMPLAINT

Plaintiff GOODMAN CAPITAL FINANCE, A DIVISION OF INDEPENDENT BANK, ("Goodman" or "Plaintiff"), by and through the undersigned counsel, files this Complaint against Defendant DEPENDANCE PLATINUM FL LLC, a Florida limited liability company ("Dependance" or "Defendant"), and states as follows:

## INTRODUCTION

Plaintiff sues to enforce black-letter UCC principles. Plaintiff is a senior creditor to non-party MRKT Apparel LLC. Defendant is a junior creditor. Defendant is aggressively collecting MRKT's collateral that it pledged to both creditors, despite Plaintiff's senior lien. Plaintiff asked Defendant to stop and

1

return what it had collected. Defendant refused. Plaintiff now sues to stop Defendant's collection efforts and recover the collateral Defendant has taken.

## PARTIES

1.      Plaintiff Goodman Capital Finance is a division of Independent Bank, a Tennessee state-chartered bank with its principal place of business in Memphis, Tennessee.[1] Under 28 U.S.C. § 1332, Independent Bank is therefore a citizen of the State of Tennessee.[2]

2.      Defendant Dependance Platinum FL LLC is a Florida limited liability company with its principal place of business at 9600 Koger Blvd N., Suite 236, St. Petersburg, FL 33702.

3.      On information and belief, none of Defendant's members are citizens of Tennessee. Plaintiff has conducted a good faith investigation into the citizenship of Defendant's members, including reviewing Defendant's contracts with MRKT and Defendant's organizational documents available with the Florida Division of

---

[1] Unincorporated divisions, such as Goodman, "are citizens of the state of which the corporation that owns the division is a citizen." *Coghlan v. Blue Cross Blue Shield of Tex.*, No. CIV.A. H-12-2703, 2013 WL 150711, at *2 (S.D. Tex. Jan. 14, 2013).

[2] *See Wachovia Bank v. Schmidt*, 546 U.S. 303, 306 (2006) ("State banks, usually chartered as corporate bodies by a particular State, ordinarily fit comfortably within this prescription" of 28 U.S.C. § 1332(c)(1)); *Norman v. Wells Fargo Bank, N.A.*, No. 0:23-CV-60645-RS, 2023 WL 10672908, at *2 (S.D. Fla. June 23, 2023) (referring to "state-chartered banks or other corporations whose citizenship is governed by 28 U.S.C. § 1332(c)(1)").

Plaintiff's Original Complaint
171118.00028/157548993v.3

Corporations, and has not identified any member with Tennessee citizenship.[3] Plaintiff will amend its jurisdictional allegations to identify each of Defendant's members' citizenship once Defendant files its Fed. R. Civ. P. 7.1 disclosure statement identifying its members.[4]

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Plaintiff and Defendant and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District, and the Defendant resides in the State of Florida, within this District.

---

[3] *See RT-destin Associates LLC v. Nexpoint Real Estate Advisors LP*, No. 3:20CV5616-MCR/EMT, 2020 WL 6505014, at *2 (N.D. Fla. Nov. 5, 2020) (holding jurisdictional allegations were "facially sufficient" when plaintiff alleged "on information and belief" after "a good faith investigation", that defendant LLC's members were not citizens of the same state as plaintiff).

[4] *See Danube Logistics USA Inc. v. Lynnhurst Logistics, LLC*, No. 3:25-CV-923-MMH-PDB, 2025 WL 2418471, at *2 n.3 (M.D. Fla. Aug. 21, 2025) (when plaintiff alleged jurisdiction on "information and belief," requiring parties to file Fed. R. Civ. P. 7.1 disclosure statements to confirm citizenship rather than dismissing); *Carr v. IF&P Holding Co., LLC*, No. CV 22-480, 2024 WL 2207487, at *4 (E.D. La. May 16, 2024), *report and recommendation adopted*, No. CV 22-480, 2024 WL 3385184 (E.D. La. June 5, 2024) ("Thus, a Plaintiff may allege jurisdiction 'on information and belief,' after which the defendant must file a disclosure of citizenship information which enables the Plaintiff to specifically allege the jurisdictional facts."); Fed. R. Civ. P. 7.1, 2022 amendment advisory note (recognizing that "[p]leading on information and belief is acceptable at the pleading stage" but subsequent "disclosure is necessary . . . to ensure that diversity jurisdiction exists").

## FACTUAL BACKGROUND

**Goodman entered into a factoring arrangement with MRKT.**

6. Goodman provides financing to businesses by purchasing their accounts receivable, a practice known as factoring. An account receivable is an amount owed to Goodman's client by the client's customer, generally documented in an invoice. After purchasing a client's accounts receivable, Goodman typically collects payment on those accounts directly from the client's customers, known as "Account Debtors."

7. MRKT is a Florida-based company, headquartered in Orlando.

8. On April 7, 2025, Goodman and MRKT entered into a Factoring Agreement, under which Goodman agreed to purchase MRKT's accounts receivable. A true and correct copy of the Factoring Agreement is attached hereto as **Exhibit A**.

9. In the Factoring Agreement, MRKT granted Goodman a continuing security interest in and lien on all of MRKT's assets, including all of MRKT's present and future accounts receivable and their proceeds. MRKT also assigned the purchased accounts receivable, and their proceeds, to Goodman.

10. The Factoring Agreement stated that Goodman could notify MRKT's customers of the assignment to Goodman of the accounts and instruct them to pay Goodman only.

4

11.     In the Factoring Agreement, MRKT agreed not to encumber any of its accounts receivable or sell any of its accounts receivable without Goodman's prior written consent.

12.     Goodman paid approximately $1 million to MRKT pursuant to the Factoring Agreement.

**Goodman perfected its lien on MRKT's assets, including its accounts receivable, in April 2025.**

13.     On April 11, 2025, Goodman perfected its security interest in its collateral by filing a UCC-1 Financing Statement with the Florida Secretary of State (the "Goodman Financing Statement"). A true and correct copy of the Goodman Financing Statement is attached hereto as **Exhibit B**.

14.     The Goodman Financing Statement covers "ALL PRESENT AND FUTURE ASSETS OF DEBTOR, WHEREVER LOCATED, TOGETHER WITH ALL PROCEEDS AND PRODUCTS THEREOF."

15.     Upon perfection of its security interest, Goodman held the most senior security interest in MRKT's assets, including all accounts receivable of MRKT.

16.     When MRKT's customers first purchased from MRKT, Goodman notified them that MRKT had assigned their accounts receivable to Goodman and directed them to remit all payments directly to Goodman.

5

Plaintiff's Original Complaint
171118.00028/157548993v.3

**Dependance entered into a merchant cash advance arrangement with MRKT after Goodman perfected its security interest.**

17.     Defendant Dependance is a merchant cash advance financier.

18.     Generally, merchant cash advance finance companies ("MCAs") purport to purchase "future" accounts receivable, i.e., accounts receivable that are not currently owed but which they anticipate their customer will generate in the future, in exchange for a significantly discounted payment. MCAs then generally collect those future receivables by taking payment directly from their customers' bank accounts, rather than collecting from their customers' clients.[5]

19.     On information and belief, MRKT entered into a merchant cash advance relationship with Dependance in June 2025. Goodman does not have a copy of the Dependance-MRKT contract from that time.

20.     Evidencing the MRKT-Dependance arrangement, on or about June 13, 2025, Dependance filed a UCC-1 Financing Statement with the Florida Secretary of State. This Financing Statement claimed an interest in "all payments received by [MRKT] or its right to receive such payments, in the ordinary course of [MRKT's] business" including "accounts and payment intangibles". A true and

---

[5] Courts have considered merchant cash advances to be disguised usurious loans and Goodman does not waive its right to so characterize the MRKT-Dependance arrangement in future pleadings. *See, e.g., Crystal Springs Capital, Inc. v. Big Thicket Coin, LLC*, 220 A.D.3d 745, 747, 198 N.Y.S.3d 142, 145 (2023).

Plaintiff's Original Complaint
171118.00028/157548993v.3

correct copy of Dependance's UCC-1 Financing Statement is attached hereto as **Exhibit C**.

21.     On or about October 3, 2025, MRKT and Dependance entered into another merchant cash advance arrangement. Dependance entered into a "Sale of Future Receipts Agreement" with MRKT (the "Dependance Agreement").  A true and correct copy of the Dependance Agreement is attached hereto as **Exhibit D.**

22.     Goodman was not aware of any MRKT-Dependance merchant cash advance arrangement and never approved them.

23.     Under the Dependance Agreement, Dependance purported to purchase $224,750 in future accounts receivable from MRKT for $155,000, further reduced by a $7,750 origination fee and MRKT's payment of $56,028 to repay an earlier advance. MRKT ultimately received $91,222 for its sale of $224,750 in accounts receivable.

24.     Dependance collected on the purported future accounts receivable by taking $7,250 each week directly from MRKT's bank account.

**Goodman's security interest is senior to Dependance's**

25.     Florida law generally governs the priority of Goodman's and Dependance's security interests in MRKT's accounts receivable.[6]

---

[6] Fla. Stat. § 679.3011(1)-(2).

7

26.    Dependance's security interest is subordinate and junior to Goodman's first priority lien. Goodman filed its UCC-1 Financing Statement on April 11, 2025, approximately two months before Dependance's UCC-1 filing on June 13, 2025.

27.    Goodman is therefore the senior secured creditor with priority over Dependance's security interest per UCC § 9-322(a)(1) / Fla. Stat. § 679.322(a) ("Conflicting perfected security interests and agricultural liens rank according to priority in time of filing or perfection.").

28.    Florida common law further supports Goodman's position. Florida adopted the English rule of priority with respect to competing assignments of the same accounts receivable. Under the English rule, lien priority goes to the creditor/assignee who first gives the account debtor notice of the assignment of accounts receivable.[7]

29.    Goodman provided the Account Debtors, MRKT's clients, with notice of MRKT's assignment of accounts receivable months before Dependance contacted them.

---

[7] *Boulevard Nat. Bank of Miami v. Air Metal Indus., Inc.*, 176 So. 2d 94, 96 (Fla. 1965) ("[T]he proper rule to be applied is that as between assignees of accounts receivable the assignee who first gives notice of his claim to the debtor is preferred and has prior rights."); *SunTrust Bank v. FBK Associate*s, No. 09-21608-CIV, 2010 WL 11505687, at *6 (S.D. Fla. Nov. 8, 2010) ("Priority, in Florida, follows the English rule to determine priority among two assignees of successive assignments of accounts.").

8

Plaintiff's Original Complaint
171118.00028/157548993v.3

30.     Goodman's senior priority extends to any cash proceeds of MRKT's accounts pursuant to Fla. Stat. § 679.3151 / UCC § 9-315.

31.     Dependance had actual or constructive notice of Goodman's prior perfected security interest. Goodman publicly filed its UCC-1 Financing Statement with the Florida Secretary of State months before Dependance filed its own UCC-1 or entered into the Dependance Agreement with MRKT.

**MRKT defaulted and Dependance began interfering with Goodman's collection and taking its collateral.**

32.     In November 2025, MRKT defaulted under the Factoring Agreement.

33.     Goodman sent additional notices to Account Debtors of MRKT, reiterating that all accounts receivable of MRKT were assigned to Goodman and that they should pay only Goodman.

34.     Separately, Dependance declared MRKT in default of the Dependance Agreement.

35.     Thereafter, Dependance began interfering with, and continues to interfere with, Goodman's collection attempts. Dependance instructed Account Debtors to pay Dependance and collected payment on MRKT's accounts receivable from Account Debtors. This violated Goodman's senior security interest and prior notice of assignment.

36.    On or about February 11, 2026, Dependance sent letters to MRKT's Account Debtors, claiming that Dependance was the "current lien holder and creditor" and demanding that Account Debtors redirect all payments due to MRKT directly to Dependance's counsel. Dependance's letters claimed that MRKT owed Dependance approximately $230,000.

37.    For example, Dependance sent collection letters to Feld Entertainment Inc. and Team IP, LLC, two of MRKT's Account Debtors, demanding that they "must immediately" redirect all payments due and owing on their accounts with MRKT directly to Dependance.

38.    On March 13, 2026, Dependance sent a collection demand to Goodman itself, improperly characterizing Goodman as an "account debtor" under UCC § 9-102 and directing Goodman to pay all amounts directly to Dependance.

39.    There is over $100,000 in MRKT accounts receivable that both Goodman and Dependance are seeking to collect.

**Goodman demanded that Dependance stop its collection efforts; Dependance refused.**

40.    On March 12, 2026, Goodman sent a letter to Dependance demanding that it stop collecting payment from the Account Debtors and remit to Goodman

10

all payments it has collected. A true and correct copy of that letter is attached hereto as **Exhibit E**.

41. Dependance refused, asserting that it was entitled to collect from MRKT's Account Debtors and Goodman.

42. Dependance has continued its efforts to collect from the Account Debtors by demanding that they pay it.

43. Dependance's actions have injured Goodman by diverting payments and interfering with collateral to which Goodman has the priority right as the senior secured creditor. Dependance's collection efforts have caused Account Debtors to delay and refuse payment to Goodman. Goodman is entitled to collect over $100,000 in outstanding accounts receivable and Dependance is actively interfering with those collection efforts.

**Goodman is entitled to collect and possess MRKT's accounts without interference.**

44. As the senior lienholder, Goodman is entitled to collect from MRKT's Account Debtors without interference from Dependance under Fla. Stat. §§ 679.4061(1) and 679.607(1) / UCC §§ 9-406 and 9-607.

45. Goodman is also entitled to take possession of MRKT's assets following MRKT's default pursuant to Fla. Stat. § 679.609(1) / UCC § 9-609.

46.    In the case of intangible collateral, like accounts receivable, "possession" is functionally achieved by notifying account debtors to pay the lender directly.

47.    When there is a post-default dispute between creditors, UCC § 9-609 comment 5 provides that the senior secured party (here, Goodman) is entitled to possession of property in the junior lienholder's possession, as follows:

> Conflicting rights to possession among secured parties are resolved by the priority rules of this Article. Thus, a senior secured party is entitled to possession as against a junior claimant. Non-UCC law governs whether a junior secured party in possession of collateral is liable to the senior in conversion. Normally, a junior who refuses to relinquish possession of collateral upon the demand of a secured party having a superior possessory right to the collateral would be liable in conversion.

## COUNT I — DECLARATORY JUDGMENT (28 U.S.C. §§ 2201–2202)

48.    Goodman adopts and realleges paragraphs 1 through 47 as if restated fully herein.

49.    This is an action by Goodman against Dependance for declaratory judgment.

50.    An actual controversy has arisen and now exists between Goodman and Dependance concerning their respective rights to disputed collateral, including all accounts receivable of MRKT.

51. Dependance's efforts to collect from the Account Debtors have injured Goodman by causing Account Debtors to delay or refuse payment to Goodman, interfering with Goodman's efforts to collect over $100,000 in outstanding accounts receivable.

52. Goodman holds a first-priority perfected security interest in all of MRKT's assets, including all of MRKT's accounts receivable and the proceeds thereof, by virtue of the Factoring Agreement dated April 7, 2025, and the UCC-1 Financing Statement filed with the Florida Secretary of State on April 11, 2025.

53. Dependance's security interest is subordinate and junior to Goodman's security interest under Fla. Stat. § 679.3221 / UCC § 9-322(a)(1).

54. Goodman is entitled to a declaration pursuant to 28 U.S.C. §§ 2201–2202 that: (a) Goodman holds a superior, present, and legal right under its first-priority perfected UCC security interest to collect and possess all of MRKT's assets, including all accounts receivable and proceeds thereof; (b) Dependance's security interest is subordinate and junior to Goodman's in all respects; and (c) Dependance must cease all collection efforts directed at MRKT's Account Debtors and remit to Goodman all proceeds of MRKT's assets collected by Dependance until Goodman's lien is satisfied.

13

55.     This declaration will eliminate MRKT's Account Debtors' uncertainty, facilitate their payment to Goodman, and clarify and settle the legal relations at issue.

## COUNT II — INJUNCTIVE RELIEF UNDER FLA. STAT. § 679.625.

56.     Goodman adopts and realleges paragraphs 1 through 47 as if restated fully herein.

57.     This is an action by Goodman against Dependance for injunctive relief.

58.     Fla. Stat. § 679.625(1) provides: "If it is established that a secured party is not proceeding in accordance with this chapter, a court may order or restrain collection, enforcement, or disposition of collateral on appropriate terms and conditions."

59.     Fla. Stat. § 679.625(1) provides for injunctive relief regardless of whether a damages remedy is available. *See id.,* comment 2.

60.     Dependance, through its counsel, has been collecting identifiable proceeds of MRKT's accounts receivable—namely, payments from MRKT's Account Debtors—to which Goodman, as the senior secured creditor, is entitled.

61.     Dependance has collected and retained such proceeds in violation of Goodman's first-priority perfected security interest, and in violation of Fla. Stat.

14

§§ 679.315, 679.3221, 679.4061, 679.6071, 679.609 / UCC §§ 9-315, 9-322, 9-406, 9-607, and 9-609.

62.     Accordingly, the Court should restrain Dependance's efforts to collect any of MRKT's assets, including its accounts receivable, in which Goodman has a senior interest until Goodman's outstanding debt is satisfied.

63.     Plaintiff also seeks all damages under Fla. Stat. § 679.625(2) to which it is entitled.[8]

## COUNT III – CONVERSION

64.     Goodman adopts and realleges paragraphs 1 through 47 as if restated fully herein.

65.     This is an action by Goodman against Dependance for conversion.

66.     Pursuant to the Factoring Agreement and Goodman's perfection of its security interest, Goodman has an immediate, unconditional right to possession of its collateral, including all of MRKT's accounts receivable and the proceeds thereof.

67.     Under the Factoring Agreement, MRKT assigned all present and future accounts receivable and their proceeds to Goodman; those accounts receivable and their proceeds are Goodman's property. Goodman therefore holds

---

[8] Fla. Stat. § 679.625(2) states: "Subject to subsections (3), (4), and (6), a person is liable for damages in the amount of any loss caused by a failure to comply with this chapter . . . ."

Plaintiff's Original Complaint
171118.00028/157548993v.3

legal title to and an ownership interest in the accounts receivable and their proceeds.

68.    Dependance has wrongfully and without authorization collected payments from MRKT's Account Debtors—payments that constitute proceeds of Goodman's collateral and to which Goodman holds a superior legal right.

69.    By collecting and retaining the accounts and proceeds of the accounts to which Goodman is entitled, Dependance has exercised dominion and control over Goodman's property in a manner that is inconsistent with and in derogation of Goodman's superior rights as the owner and first-priority secured creditor.

70.    The proceeds from the accounts at issue are specifically identifiable based on MRKT's records and invoices.

71.    Goodman demanded that Dependance cease its collection activities and remit all proceeds collected from MRKT's Account Debtors to Goodman. Dependance refused to comply with this demand and has continued to assert dominion over and retain proceeds of Goodman's collateral.

72.    As a direct and proximate result of Dependance's conversion, Goodman has been damaged in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Goodman Capital Finance, a division of Independent Bank, respectfully requests that this Court enter judgment in its favor

16

Plaintiff's Original Complaint
171118.00028/157548993v.3

and against Defendant Dependance Platinum FL LLC, and award the following

relief:

a. **Declaratory Judgment**: A declaration pursuant to 28 U.S.C. §§ 2201–2202 that Plaintiff holds a superior, present, and legal right under its first-priority perfected UCC security interest to collect and possess all collateral of MRKT Apparel LLC, including all accounts receivable and proceeds thereof, that Defendant's security interest is subordinate and junior to Plaintiff's in all respects, and that Defendant must cease all collection efforts directed at MRKT's Account Debtors and remit to Plaintiff all proceeds of MRKT's assets until Plaintiff's lien is satisfied.

b. **Preliminary Injunction**: A preliminary injunction pursuant to Federal Rule of Civil Procedure 65 and Fla. Stat. § 679.625, enjoining Defendant, its agents, attorneys, employees, representatives, and all persons acting in concert or participation with Defendant, from (i) collecting or attempting to collect any accounts receivable or other collateral of MRKT; (ii) contacting or communicating with any Account Debtor of MRKT for the purpose of collecting or diverting payments; and (iii) interfering in any manner with Plaintiff's first-priority perfected security interest in its collateral.

c. **Permanent Injunction**: A permanent injunction enjoining Defendant, its agents, attorneys, employees, representatives, and all persons acting in concert or participation with Defendant, from engaging in the conduct described in subparagraph (b) above.

d. **Conversion Damages**: An award of compensatory damages for Defendant's conversion of Plaintiff's property, including the full value of all accounts receivable and proceeds wrongfully collected and retained by Defendant, in an amount to be determined at trial.

e. **Actual Damages**: An award of actual damages suffered by Plaintiff, pursuant to Fla. Stat. § 679.625(2), as a result of Defendant's wrongful conduct, in an amount to be determined at trial.

f. **Attorneys' Fees and Costs**: An award of Plaintiff's reasonable attorneys' fees and costs incurred in connection with this action, to the extent permitted by applicable law.

g. **Pre-Judgment and Post-Judgment Interest**: An award of pre-judgment

and post-judgment interest at the maximum rate permitted by law.

h. **Further Relief**: Such other and further relief as this Court deems just and proper.

Dated: <u>March 27, 2026</u>                     Respectfully submitted,


**BLANK ROME LLP**

<u>/s/Michael R. Esposito</u>
Michael R. Esposito, Esq.
Florida Bar No. 37457
100 S. Ashley Drive, Suite 600
Tampa, FL 33602
Telephone: (813) 255-2324
Email: michael.esposito@blankrome.com

-and-

Daniel S. Klein, Esq.
(Pro hac vice forthcoming)
200 Crescent Court, Suite 1000
Dallas, TX 75201
Telephone: (972) 850-1452
Email: daniel.klein@blankrome.com

*Attorneys for Plaintiff*
*Goodman Capital Finance,*
*A Division of Independent Bank*

18